# CRIMINAL COMPLAINT

**Trial Court of Massachusetts**
**Haverhill District Court**

| DEFENDANT | |
|---|---|
| JEANNITE, JOEL | |
| 104 MAIN STREET | |
| GROVELAND, MA 01834 | |

TO ANY JUSTICE OR CLERK-MAGISTRATE OF THE HAVERHILL DISTRICT COURT

| DATE OF BIRTH | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| 12/24/1980 | M | B | 5'05" | 160 | BRO | BLK |

| INCIDENT REPORT # | SOCIAL SECURITY # |
|---|---|
| | 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 |

| DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|
| 07/30/2001 | HAVERHILL |

| COMPLAINANT | POLICE DEPARTMENT |
|---|---|
| DEKEON, GEORGE DET | HAVERHILL PD |

| DATE OF COMPLAINT | RETURN DATE AND TIME |
|---|---|
| 07/31/2001 | 07/31/2001 12:00 AM |

The undersigned complainant, on behalf of the Commonwealth, on oath complains that on the date and at the location stated herein the defendant did commit the offense(s) listed below

*[handwritten notations: Arr 7/31/01  Hme; Arr 8/20/01; Marsha Kagarosian JD]*

**COUNT-OFFENSE**

1. 272/53/F DISORDERLY CONDUCT c272 §53

on 07/30/2001 was a disorderly person, in that he or she did, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, engage in fighting or threatening, or in violent or tumultuous behavior, or did create a hazardous or physically offensive condition by an act that served no legitimate purpose of the defendant, in violation of the common law and G.L. c.272, §53. (PENALTY: jail or house of correction not more than 6 months; or not more than $200; or both.)

**PROSECUTION**

**COUNT-OFFENSE**

2. 90/25/B LICENSE/REGIS/PLATES, REFUSE PRODUCE c90 §25

on 07/30/2001: (1) while operating or in charge of a motor vehicle, did refuse, on demand of a police officer who was in uniform or who displayed his or her badge conspicuously on the outside of his or her outer coat or garment, to produce his or her license to operate such vehicle or his or her certificate of registration, or to permit such officer to take the license or certificate in hand for the purpose of examination, or (2) while operating or in charge of a motor vehicle, did without a reasonable excuse fail to deliver his or her license to operate motor vehicles on demand of a police officer, or any officer mentioned in G.L. c.90, §29 or authorized by the Registrar of Motor Vehicles or the certificate of registration of a motor vehicle operated or owned by him or her, or the number plates furnished by the Registrar of Motor Vehicles for such motor vehicle, in violation of G.L. c.90, §25. (PENALTY: $100.)

**COPY**

**COUNT-OFFENSE**

*[handwritten: No Jric Crt]*

**COUNT-OFFENSE**

*[handwritten: Would Not Tshr CC of not Dismiss Do Not]*

| COMPLAINANT | SWORN TO BEFORE CLERK-MAGISTRATE | ON (DATE) | TOTAL COUNTS |
|---|---|---|---|
| X | X | | 2 |

| (PROSECUTION COPY) | FIRST JUSTICE | | COURT ADDRESS | Haverhill District Court |
|---|---|---|---|---|
| | Hon. KEVIN M HERLIHY | | | J. P. Ginty Blvd |
| A TRUE COPY ATTEST: X | CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) | | P.O. Box 1389 |
| | | | | Haverhill, MA 01831 |

```
 1  Q  Did you have any discussions with any of them
 2     regarding the disposition short of trial?
 3  A  I don't have any recollection of that.
 4  Q  Have you ever met Stephen Brighi?
 5  A  Not to my knowledge.
 6  Q  Do you know who he is?
 7  A  I notice -- I have heard the name before and I
 8     notice from the complaint filed by the defendant
 9     that he's captioned as the chief of police for
10     Haverhill during this time period.
11  Q  And he was.  Okay.  But you don't have a memory of
12     meeting him?
13  A  Correct.
14  Q  You have no memory of any discussion with him about
15     this case?
16  A  I have absolutely no memory of him.
17  Q  Do you remember having any discussion with anyone
18     regarding a disposition short of trial in this case?
19  A  Yes.
20  Q  Who did you have such a discussion with?
21  A  John DePaulo, the trial court supervisor in
22     Haverhill.
23  Q  Can you tell us what that discussion was.
24  A  The only thing that I recall to the best of my
```

```
 1     memory -- and I apology for not remembering the
 2     precise conversation -- was that when I was assigned
 3     this case, I was told that the defendant doesn't
 4     want to plead, that he, he wanted a jury trial.  So
 5     that foreclosed any further thought of disposing of
 6     the case.
 7  Q  Did you or his attorney raise it again preliminary
 8     or before the trial?
 9  A  I have no recollection of that happening.
10  Q  It's fair to say that it's not uncommon for a
11     defendant to insist on his right to trial and on the
12     eve of trial withdraw his insistence?
13  A  Correct, not uncommon.
14  Q  And the realty of the trial brings many defendants
15     to a different frame of mind?
16  A  That's so.
17  Q  So the fact that when the case was handed to you by
18     Mr. DePaulo, it came with the direction defendant
19     wants to go to trial wouldn't necessarily foreclose
20     the notion in your mind?
21  A  Correct.
22  Q  Or inhibit you from speaking about a disposition?
23  A  Also true.
24  Q  Do you recall who the defendant's attorney was?
```

I-23

```
 1  A  Yes.
 2  Q  Who was the defense attorney?
 3  A  Marsha Kazarosian.
 4            [Off-record discussion held]
 5  Q  Did you know Ms. Kazarosian before this case?
 6  A  I never met her personally.
 7  Q  Did you know of her by reputation?
 8  A  Yes.
 9  Q  What did you know her reputation to be?
10  A  An exceptional trial lawyer.
11  Q  Was it unusual for her to be representing a
12     defendant in the Haverhill District Court in your
13     mind?
14  A  I don't know.  I wouldn't know.
15  Q  Didn't raise your eyebrows?
16  A  I have gone against lawyers big and small in the
17     district court and superior court.  It's never
18     unusual for me to see any particular lawyer.
19  Q* The fact that she was representing Mr. Jeannite
20     didn't bring any unusual thoughts to you in any
21     matter?
22           MS. MC LAUGHLIN: Objection.  To the
23     extent that you are asking about unusual thoughts
24     about how he would prosecute the case, that's fairly
```

I-24

```
 1     privileged.
 2           MR. FISCHER: That's not the intent of my
 3     question.
 4           MS. MC LAUGHLIN: Then you can rephrase
 5     because you just said "unusual thoughts."
 6           MR. FISCHER: Off the record.
 7           [off-record discussion held]
 8          *[The record was read.]
 9           MR. FISCHER: Let me ask the same
10     question with the modifying clause "except as to
11     your trial preparation."
12           MR. TEHAN: Objection as to form.
13           MS. MC LAUGHLIN: Yes, it's --- Step
14     outside for one second.
15           [off-record discussion held]
16  Q  Let me ask you this.  It didn't surprise you to see
17     Ms. Kazarosian or any other attorneys?
18  A  No.
19  Q  Did you have any discussion with Ms. Kazarosian
20     before the trial?
21  A  Yes.
22  Q  Can you tell me about that conversation.
23  A  It would be difficult to recall.  It would be
24     difficult.
```



```
 1  Q  As best you can recall. Having been there, it's an
 2     enlightening experience to be the witness rather
 3     than the one asking the question, and I have since
 4     come to say I'm a much better lawyer than a witness,
 5     and that's not going to my ability as a lawyer.
 6  A  My recollection is going to be vague on this. What
 7     I do recall is getting to know or trying to get to
 8     know Ms. Kazarosian because it's a very intimate
 9     experience to try the case with someone, working
10     together for a long period of time, so I like to get
11     to know the lawyer. So Attorney Kazarosian and I, I
12     recall having some small talk and exchanging some
13     pleasantries. It wasn't substantive, I should say,
14     it was totally joking around and just getting to
15     know each other's personality.
16         MS. MC LAUGHLIN: Keep your voice up a
17     little so the court reporter can hear you.
18         THE WITNESS: Yes. All right.
19  Q  Other than the small talk which you can't recall,
20     did you have any other conversation that you can
21     recall?
22  A  I can't recall any other specific or substantive
23     conversation. This comes to my mind, the
24     pleasantries that we had because I found her to be
```

```
 1     very pleasant. That's why I remember that.
 2         MR. TEHAN: Off the record.
 3         [off-record discussion held]
 4  Q  Do you recall any discussion with her regarding the
 5     potential disposition short of trial?
 6  A  No.
 7  Q  No one raised it?
 8  A  I have no recollection of any discussion regarding
 9     disposition of the case short of trial. I only
10     recall discussing the matter with her in terms of
11     it's going to be a trial. That was my, that was the
12     gist of what I got from her.
13  Q  Did you have any discussion with any of the police
14     officers, Dekeon which is D E K E O N, Doherty,
15     D O H E R T Y, or Fogarty regarding disposition of
16     the case before trial?
17         MR. TEHAN: Objection. Asked and
18     answered.
19  A  I have no recollection of speaking with any of those
20     people regarding a disposition of this case.
21  Q  Do you have any recollection of any discussion of a
22     civil rights claim at that time?
23  A  I have recollection that, of an understanding that
24     the defendant was going to be suing. I didn't know
```

```
 1     what the basis, I didn't know it was civil rights.
 2     I know that he was going to sue or saying he was
 3     going to sue.
 4  Q  From where did that understanding come?
 5  A  I'm unable to state with specificity. I could give
 6     you the best of my memory.
 7  Q  Tell me what you remember.
 8  A  I seem to recall learning that initially from
 9     Attorney DePaulo.
10  Q  What did you learn from Attorney DePaulo?
11  A  Again, sir, I have to apologize. It's difficult for
12     me to recall because this is some time ago. I just
13     remember learning from Attorney DePaulo that the
14     defendant wanted a trial, that he said it was, he
15     was harassed and he was going to sue.
16  Q  You have tried many cases?
17  A  I have tried a fair number of cases.
18  Q  And you have been involved in many more cases?
19  A  Oh, yes, I have been involved in many more cases.
20  Q  Would it be fair to say that it's not uncommon for a
21     defendant to claim he was harassed and threaten to
22     sue?
23  A  It is uncommon. If one were to look at the total
24     number of cases I deal with, it's extraordinarily
```

```
 1     uncommon to hear that.
 2  Q  How many times have you heard it in your seven and a
 3     half years as a district attorney?
 4  A  I have handled or been involved with thousands and
 5     thousands of prosecutions. I would -- Any number
 6     that I attribute to this is going to be a wild
 7     guess.
 8  Q  I don't want you to give a wild guess, but we don't
 9     expect a specific answer. We are just looking for
10     your best estimate.
11  A  Having said that, my best estimate would probably be
12     in my seven and a half years maybe a hundred times,
13     maybe.
14  Q  In those hundred times do you know if any of those
15     instances actually resulted in a civil lawsuit?
16  A  I have vague recollections in the periphery of my
17     mind that maybe one or two, but this is the only one
18     that I can say with certainty that resulted in
19     litigation.
20  Q  Did any of the police officers express any concern
21     that this might become a civil lawsuit with respect
22     to this case?
23         MR. TEHAN: Objection.
24  A  To characterize it as concern, I'd be unable to
```

EXHIBIT B



```
1   Q   And there is no clear line like that that you can
2       educate me that distinguishes between a civil
3       offense and a crime?
4   A   You have already misstated a distinction between a
5       misdemeanor and felony.
6   Q   How have I done so?
7   A   Your statement that two and a half is the
8       distinction is wrong.
9   Q   Well, I'm sorry. It's a house of correction versus
10      a state prison?
11  A   That's also incorrect.
12  Q   What is the distinction?
13  A   Felony is any crime punishable by state
14      imprisonment. Crimes that are not punishable by
15      state imprisonment are misdemeanors.
16  Q   That's a clear line?
17  A   That's the clear line that I'm familiar with.
18  Q   You can't tell me a clear line by which you can
19      determine that something constitutes a misdemeanor
20      crime as opposed to civil traffic fraction?
21          MR. TEHAN: Objection.
22  A   Other than what I have already explained to you, my
23      understanding of that I wouldn't be able to further
24      explain that to you. Sorry.
```

```
1   Q   And you are not able to tell me what the basis for
2       the direction "do not dismiss" written by Attorney
3       DePaulo on Exhibit 5, what the basis for that was?
4   A   DePaulo, and I believe we've addressed this matter
5       already.
6   Q   You are not able to tell me what the basis is?
7           THE WITNESS: May I approach counsel?
8           MS. MC LAUGHLIN: His previous answer is
9       on the record. To the extent that you are asking
10      for his guess, I think that's improper.
11          MR. FISCHER: I'm asking him to confirm,
12      no, I'm not able to tell you. I believe that was
13      his answer before.
14          MS. MC LAUGHLIN: That was his answer, so
15      I don't know why you are asking it again.
16          THE WITNESS: Are you asking me to tell
17      you why John DePaulo wrote that?
18          MR. FISCHER: If you know.
19          THE WITNESS: I don't know.
20  Q   I'd have to ask Mr. DePaulo that?
21  A   You would have to ask Mr. DePaulo, yes.
22  Q   Do you recall any discussion at any time with anyone
23      regarding dismissal of this case in return for a
24      waiver of or release of civil rights claims?
```

```
1   A   No.
2           MR. FISCHER: I have no further questions
3       at this point, but I ask that we agree to suspend
4       subject to the plaintiff's right to seek an order to
5       compel the answers to the questions to which
6       privilege is asserted.
7           MS. MC LAUGHLIN: You know my position
8       that the privilege stands, but in the event that the
9       Court grants a motion to compel, we can reopen for
10      those questions allowed by the Court. There is no
11      reason to send a new notice of deposition.
12          Here is my card in case you need to get
13      in touch with me on that.
14          MR. TEHAN: I have a few questions
15      myself.
16          CROSS EXAMINATION BY MR. TEHAN
17  Q   Do you have a memory of the actual trial of the
18      complaint brought by Officer Dekeon that brings us
19      here?
20  A   Yes.
21  Q   Who testified at the trial?
22  A   Can't give you a complete list of witnesses. What I
23      can tell you is my recollection of witnesses that
24      did testify.
```

```
1   Q   Please.
2   A   To the best of my recollection I know that Officer
3       Dekeon testified and I believe that Ann Rose who was
4       the civilian witness or one civilian witness
5       testified.
6   Q   Now you have reviewed Officer Dekeon's police
7       report, is that correct, in order to prepare for
8       today's depo?
9   A   Yes.
10  Q   That is part of what has been marked as an exhibit
11      today, correct?
12          MS. MC LAUGHLIN: It's actually not been
13      marked. We can do so.
14          MR. FISCHER: It's part of what I have
15      offered to mark later but which we haven't marked.
16      To help Mr. Tehan, why don't we mark it as Exhibit
17      6. What I'd like to do is take the paper clip off
18      and staple the whole thing and mark it as one
19      exhibit. That would be easier.
20          [Exhibit 6 marked for identification]
21  Q   In order to prepare for today's depo you reviewed
22      what has been marked as Exhibit 6, is that correct?
23  A   In addition to this I also reviewed the complaint
24      which I believe was filed in this case.
```