UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10541-RWZ

| | |
|---|---|
| JOEL JEANNITE,<br><br>            Plaintiff<br>v.<br><br>CITY OF HAVERHILL, STEPHEN BRIGHI,<br>in His Capacity as CHIEF OF THE<br>HAVERHILL POLICE DEPARTMENT,<br>STEPHEN DOHERTY, GEORGE DEKEON,<br>JR., JOHN DOE, and JOHN ROE<br>            Defendants | MEMORANDUM IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT<br>BY STEPHEN BRIGHI, STEPHEN<br>DOHERTY, GEORGE DEKEON, JR.<br>AND GLEN FOGARTY |

I.   INTRODUCTION

This action arises from the July 30, 2001 arrest of plaintiff Joel Jeannite ("Jeannite") in the City of Haverhill ("City") on charges of disorderly conduct and failure to produce a license and registration. Jeannite was subsequently convicted in Haverhill District Court of the latter charge.

The overbroad and vaguely pled 10-Count Complaint asserts a myriad of constitutional and tort claims against the City, the City's former police chief Stephen Brighi ("Brighi") in his official capacity,[1] and Haverhill police officers Stephen Doherty ("Doherty"), George Dekeon, Jr. ("Dekeon") and Glen Fogarty ("Fogarty").[2] The Complaint fails to distinguish which claim pertains to which individual defendant, despite their differing and discrete roles in the incidents at issue.

---

[1] The Complaint names Brighi in his official capacity only, and thus all claims against Brighi properly equate to claims against the City. See, e.g, Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985). Nonetheless, this Memorandum addresses claims against Brighi in his individual capacity, in the event the Court may construe the Complaint as pleading same. A separate Memorandum submitted by defendants addresses claims plaintiff may have intended to bring against Brighi in his supervisory capacity.
[2] Glen Fogarty was substituted for defendant John Doe upon motion by the plaintiff.

The within Memorandum is submitted in support of motions for summary judgment by defendants Doherty, Dekeon, Fogarty, and Brighi.

II.     STATEMENT OF FACTS

The relevant facts underlying this case are set forth in the Defendants' Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987).  The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the nonmovant's claim, or demonstrating that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence. Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

IV.     ARGUMENT

   A.   Plaintiff Has Failed to Establish His Constitutional Claims (Counts I and II)

Count I asserts claims, pursuant to 42 U.S.C. §1983, for unlawful search and seizure, false arrest, malicious prosecution, and violation of plaintiff's Due Process, Equal Protection, and Free Speech/Free Petition rights. Complaint, ¶18.  Count II asserts the same claims, minus the Equal Protection and right to petition claims, pursuant to G.L. c.12, §11H, the Massachusetts

Civil Rights Act ("MCRA"). Complaint, ¶22. Plaintiff has failed to establish any of his constitutional claims against the individual defendants, for the reasons set forth below.

1. Plaintiff's Claims for False Arrest and Malicious Prosecution Are Barred Due to His Conviction

A claim that "call[s] into question the lawfulness of conviction" is not cognizable under §1983. See Heck v. Humphrey, 512 U.S. 483, 114 S.Ct. 2364 (1994); see also Figueroa v. Rivera, 147 F.3d 77, 80 (1998); Sholley v. Town of Holliston, 49 F.Supp.2d 14, 18 (D.Mass. 1999, Saris). In Heck, the Supreme Court held that allowing a tort action to proceed where the plaintiff has been convicted in the underlying criminal prosecution would risk "parallel litigation over the issues of probable cause and guilt," "permit a collateral attack on the conviction through the vehicle of a civil suit," and contravene the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Heck, 512 U.S. at 484-85. As such, when a plaintiff seeks damages in a §1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." If so, the suit must be dismissed. Id., at 487.[3]

In this case, contrary to a blatantly false assertion in the Complaint that "all criminal charges against the plaintiff were dismissed," Complaint, ¶15, Jeannite was, in fact, convicted of failure to produce a license, one of the two charges for which he was arrested.[4] Statement, ¶23. A judgment in favor of Jeannite's §1983 claims for false arrest and malicious prosecution

---

[3] Heck involved an incarcerated plaintiff bringing suit for wrongful imprisonment as well as wrongful conviction. The First Circuit has extended the requirements of Heck to individuals who, like plaintiff here, are not incarcerated, because "the principle barring collateral attacks … is not rendered inapplicable by the fortuity that a convicted criminal is [not] incarcerated." White v. Gittens, 121 F.3d 803, 806 (1997) (citing Heck, 512 U.S. at 490 n.10, 114 S.Ct. 2364).

[4] Failure to produce a license upon request of a police officer is an arrestable criminal offense. See, e.g., Com. v. Stack, 49 Mass.App.Ct. 227, 233-34, 728 N.E.2d 956 (2000) ("as each driver failed to produce a license on demand … the police had probable cause to arrest"); Com. v. Lantigua, 38 Mass.App.Ct. 526, 528, 649 N.E.2d 1129 (1995) ("[t]he defendant's inability to produce a license was itself a criminal offense … and gave the officers probable cause to arrest him"). See also G.L. c.90, §25.

"would necessarily imply the invalidity of his conviction," because such a judgment would require a finding that the defendants lacked probable cause to arrest and seek criminal charges against him. See Lallemand v. University of Rhode Island, 9 F.3d 214, 215 (1st Cir. 1993) (false arrest claim requires lack of probable cause); Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (same, malicious prosecution). A finding that the defendants lacked "probable cause" to believe Jeannite had committed the offense of failure to produce a license would necessarily imply the invalidity of a jury's prior finding that Jeannite committed the offense "beyond a reasonable doubt." Such an outcome is impermissible under the holding in Heck, and, accordingly, Jeannite's claims for false arrest and malicious prosecution must be dismissed. See also Figueroa, 147 F.3d at 80 (dismissing murder convict's §1983 action for conspiracy by law enforcement officials); Sholley, 49 F.Supp.2d at 18 (dismissing false arrest claim by plaintiff convicted on underlying charge, because "were plaintiff to show that there was no probable cause for his arrest, he would impliedly undermine his conviction").[5]

    Any contention that plaintiff avoids Heck's preclusive effect because he was convicted of only one of the charges for which he was arrested has already been rejected by this and other courts. See, e.g., Davis v. Schifone, 185 F.Supp.2d 95, 99-100 (D.Mass. 2002,Tauro, J.); Sholley v. Town of Holliston, 49 F.Supp.2d 14, 18-19 (D.Mass. 1999, Saris, J.); Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995). These cases hold that, where a plaintiff is arrested and prosecuted on multiple charges, conviction on just one of the charges bars subsequent §1983 claims.

---

[5]In addition to these cases, several unpublished First Circuit decisions have invoked Heck to dismiss §1983 actions by plaintiffs convicted in the underlying prosecution. See, e.g., Colon v. Special Agent Connolly, 78 Fed.Appx. 732, 733 (1st Cir. 2003); Forte v. Reilly, 43 Fed.Appx. 395, 396 (1st Cir.2002); Ramsdell v. Rhode Island Dept. of Corrections, 229 F.3d 1133 (1st Cir. 2000).

For example, in Sholley, the plaintiff was arrested and charged with violation of an abuse prevention order and for failure to submit, and duly convicted on the latter charge only. The Court held that plaintiff's acquittal on the former charge was "irrelevant" to his false arrest claim because "[t]he arrest was a single, indivisible event. If there was probable cause for any of the charges made … then the arrest, of which there was only one, was supported by probable cause." Sholley, 49 F.Supp.2d at 18. Because there was only a single incident, the Court explained, the plaintiff "would have to prove that [the defendant] did not have probable cause to arrest him for any reason. But proof that there was no probable cause to arrest for any reason necessarily implies the invalidity of the conviction for failure to submit. … This is precisely the situation that Heck does not countenance." Id.

Similarly, in Davis, the Court invoked the principles in Heck to dismiss a false arrest claim by a plaintiff who was arrested for operating under the influence and failing to stop for an officer, and convicted of only the former charge. Davis, 185 F.Supp.2d at 99-100. In Wells, where the plaintiff was acquitted of disorderly conduct but convicted of resisting a search incident to arrest, the court stated that the acquittal on the former charge was "insignificant" to plaintiff's false arrest claim. Wells, 45 F.3d at 95  Citing Heck, the Court held that "[t]he claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges made … then the arrest was supported by probable cause, and the claim for false arrest fails." Id. See also Bergstralh v. Lowe, 504 F.2d 1276 (9th Cir.) (1974) (Section 1983 claim precluded where plaintiff was convicted for resisting arrest but acquitted on underlying disorderly conduct charge); Frazier v. Woods, 1998 WL 146231, *4 (S.D.N.Y.1998) (Heck analysis unaffected by plaintiff's conviction on only 5 of 12 charges, where charges were "closely related, stemming

from the same facts and type of conduct"). Pursuant to the consistent holdings in these cases, the arrest of Jeannite on two charges comprised a "single indivisible event," for which a criminal jury has already found probable cause to have existed. Thus, plaintiff's Section 1983 claims for false arrest and malicious prosecution are precluded and should be dismissed.[6]

>   1-(a)   Even if Plaintiff's Claims for False Arrest and Malicious Prosecution Are Not Barred By the Heck Doctrine, They Should Be Dismissed As Against Doherty and Fogarty

Assuming, arguendo, that Jeannite's false arrest and malicious prosecution claims are not barred by the Heck doctrine, these claims should still be dismissed as against Doherty and Fogarty. The evidence demonstrates that neither officer played any role in the decision to arrest or prosecute Jeannite, as Dekeon alone made the decision to arrest plaintiff, arrested plaintiff, and sought the criminal complaint against him. Statement, ¶¶16, 22.

Instead, the role of Doherty and Fogarty, who encountered Jeannite prior to Dekeon's arrival, is limited to the initial stop of plaintiff. As such, their actions are analyzed under the "reasonable suspicion" standard set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968); that is, whether the stop was justified by a reasonable, articulable suspicion that Jeannite "ha[d] been, or [was] about to be engaged in criminal activity." United States v. Hensley, 469 U.S. 221, 227, 105 S.Ct. 675, 679 (1985); see also U.S. v. Romain, 393 F.3d 63, 71 (1st Cir.2004) ("the baseline rule hold[s] that an officer may conduct a brief investigatory stop if he has a reasonable, articulable suspicion that criminal activity is afoot").[7]

The undisputed facts within the officers' knowledge at the time of the stop comprise "specific, articulable facts which, taken together with rational inferences from those facts,

---

[6] Plaintiff's claim for malicious prosecution fails for the additional reason that the underlying proceeding did not terminate in his favor. See Nieves, 241 F.3d at 53.

[7] Defendants submit that no civil claim even exists predicated solely upon an allegedly unlawful Terry stop, as the First Circuit has never explicitly recognized such a claim (but see Willhauck v. Halpin, 953 F.2d 689, 716 n.26 (1st Cir1991). In any event, the stop was justified for the reasons set forth below.

reasonably warrant" an investigatory stop. Romain, 393 F.3d at 71 (quoting Terry, 392 U.S. at 21, 88 S.Ct. 1868). It is undisputed that at approximately 8 p.m. on July 30, 2001, Doherty and Fogarty were on patrol together when they received a transmission from the police dispatcher, advising that a 911 caller at 11 Union Street had reported suspicious activity. Statement, ¶¶1-2. Specifically, a female resident had reported that a black male, who was driving a black Jaguar and whom she did not know, came to her house and asked her questions. Statement, ¶2. The transmission also reported that a Union Street resident had called the police station the previous day, reporting the identical activity. Statement, ¶3. "The emergency nature of a 911 call supported a reasonable inference that the woman felt threatened by her situation and desired police protection." Romain, 393 F.3d at 71; see also Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921 (1972) (reasonable suspicion for a Terry stop may be based on information furnished by others). The undisputed facts establish that, upon arriving on Union Street after receiving the dispatch, Doherty and Fogarty observed a black Jaguar stopped on the street with its trunk lock missing. Statement, ¶7. The officers testified, based on their experience, that a missing trunk lock is often an indication that the car has been stolen. Statement, ¶8. See United States v. Woodrum, 202 F.3d 1, 7 (1st Cir.2000) (in evaluating whether reasonable suspicion existed, some "[d]eference is due to the experienced perceptions of the officers"). Moreover – and perhaps most significantly – Union Street is located in "Acre Neighborhood," an area known to Doherty and Fogarty as an "explosive" area with the City's highest rate of crime. Statement, ¶4. There is considerable drug activity in the area, and numerous incidents of violence have taken place there, including the stabbing of a state trooper in 1996 and a disturbance following an arrest a year or two prior to the incident in this case. Id. See Illinois v. Wardlow, 528 U.S. 119, 119, 528 S.Ct. 673, 673-74 (2000) ("a location's characteristics are relevant in determining

whether the circumstances are sufficiently suspicious to warrant further investigation"); United States v. Trullo, 809 F.2d 108, 111 (1st Cir. 1987) ("officers may consider the characteristics of the area in which they encounter a vehicle"); United States v. Rickus, 737 F.2d 360, 365 (3d Cir.1984) ("[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely").

As a matter of law, these facts – a 911 call of suspicious activity, a missing trunk lock indicating that the vehicle was stolen, in a high-crime area known for drug activity and violence – comprise reasonable suspicion justifying a brief investigatory stop of the plaintiff. Compare Romain, 393 F.3d at 72 (police had reasonable suspicion to search plaintiff, where 911 caller reported that man in apartment had a gun, woman in apartment nodded in response to officer's query about presence of armed man in apartment, and plaintiff behaved aggressively). Therefore, the stop of plaintiff did not violate his constitutional rights, and, because Doherty and Fogarty did not take part in the ensuing arrest or prosecution of plaintiff, plaintiff's false arrest and malicious prosecution claims against Doherty and Fogarty should be dismissed.

    1-(b)   Doherty, Fogarty, and Dekeon are Entitled to Qualified Immunity

Even if, arguendo, reasonable suspicion did not exist, Doherty and Fogarty would be entitled to qualified immunity from plaintiff's Fourth Amendment claims. "[T]he focus in the usual Fourth Amendment qualified immunity analysis is … whether a particular search and seizure was, in fact, unreasonable." Duca v. Martins, 941 F.Supp. 1281, 1293 n. 11 (D.Mass.1996, Wolf, J.) (also noting that in police misconduct cases, a determination that officer is entitled to qualified immunity is tantamount to a determination that no substantive violation has occurred). Qualified immunity is "a shield to 'all but the plainly incompetent or those who knowingly violate the law.'" Wagner v. City Of Holyoke, 404 F.3d 504, 508 (1st Cir.2005)

(quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)).  Given the undisputed facts surrounding Jeannite's stop, described above, "this is not a case in which reasonable officers, in light of clearly established law, 'must have known that [they were] acting unconstitutionally.'  Wagner, 404 F.3d at 509 (quoting Dirrane v. Brookline Police Dep't, 315 F.3d 65, 71 (1st Cir.2002) (emphasis in original)).  Even if the officers' belief that the stop was reasonable was mistaken, "it would not have been egregiously so and, accordingly, qualified immunity is available."  Wagner 404 F.3d at 509 (holding that while supervisor may have violated plaintiff's clearly-established right to engage in First Amendment speech without retaliation, the facts surrounding plaintiff's speech might have led a reasonable supervisor to believe that he was entitled to discipline plaintiff, and supervisor was thus entitled to qualified immunity).

Similarly, no reasonable officer in Dekeon's position would have known he violated plaintiff's rights by arresting him for failing to produce a license and registration, since as noted in footnote 4, supra, this act, of which plaintiff was convicted, comprises an arrestable offense. Accordingly, Dekeon is entitled to qualified immunity from plaintiff's unlawful arrest and malicious prosecution claims as well.

      2.     Plaintiff Fails to Establish A Claim for Unlawful Search

Plaintiff's claim for unlawful search appears to be based on his allegation that an unidentified officer opened the trunk of his vehicle following his arrest.  (There is no allegation or evidence that any officer ever searched Jeannite).  Dekeon acknowledges performing an inventory search of the vehicle.  Statement, ¶20.  Plaintiff's claim for unlawful search fails as a matter of law because an inventory search of a motor vehicle is lawful if carried out in accordance with standard police procedures.  Florida v. Wells, 495 U.S. 1, 3-4, 110 S.Ct. 1632

(1990); South Dakota v. Opperman, 428 U.S. 364, 376, 96 S.Ct. 3092 (1976). The policies and procedures for the Haverhill Police Department provide that whenever a vehicle is to be towed or impounded, "an inventory of that vehicle must be performed by either the investigating officer or his superior officer." Statement, ¶21. The policies and procedures also prescribe the methods for conducting such an inventory, which include "[a]n examination of … the interior of the trunk." Id. Therefore, to the extent Dekeon searched the trunk or any other part of the vehicle following plaintiff's arrest, he did so in accordance with departmental procedures and thus committed no unlawful act. See Wells, Opperman, supra.

    3.    <u>Plaintiff Fails to Establish a Claim of Excessive Force</u>

The Introduction to the Complaint alleges that the Haverhill police officers "us[ed] force beyond that which was necessary to place the plaintiff under arrest." Complaint, p.1. This allegation, which is contained nowhere else in the Complaint and is not supported by any specific allegations, is negated by Jeannite's own testimony that, other than Dekeon's placement of handcuffs on him, no officer engaged in any physical contact with him, and that he suffered no physical injury whatsoever due to his arrest. Statement, ¶17. Moreover, there is no allegation or evidence that Dekeon applied the handcuffs too tightly. Contrast McPherson v. Auger, 842 F.Supp. 25, 30 (D.Me 1998) (denying summary judgment on excessive force claim where defendant refused to loosen handcuffs despite plaintiff's complaints that cuffs were too tight). As such, judgment should enter for all defendants on the excessive force claim.

    4.    <u>Plaintiff Fails to Establish a Cognizable Due Process Claim</u>

Plaintiff claims that his arrest and prosecution violated his right to due process. Complaint, ¶22. This claim must be dismissed as a matter of law because no such cause of action exists.

Specifically, any claim for wrongful arrest must be analyzed under the Fourth Amendment's standard of probable cause, rather than under the more generalized notion of substantive due process. See Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807 (1994) (rejecting attempt to use substantive due process as a framework for assessing a claim for unlawful detention); Ahern v. O'Donnell, 109 F.3d 809, 818-19 (1st Cir.1997) (plaintiff's claim that he was wrongfully admitted to psychiatric facility subject to Fourth Amendment analysis); Holland v. City of Portland, 102 F.3d 6, 10-11 (1st Cir.1996) ("in evaluating arrests, the Supreme Court has given primacy to the Fourth Amendment's own objective standards, even where other constitutional bases might be invoked"). Similarly, "[t]here is no substantive due process right … to be free from malicious prosecution," a cause of action that is also analyzed under the Fourth Amendment's probable cause standard. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir.1996); Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir.1999).

Nor does a procedural due process claim exist based on a wrongful arrest or wrongful prosecution, since "the availability of a plainly adequate remedy under Massachusetts law … defeats the possibility of a procedural due process claim" in either case. Roche, 81 F.3d at 256; see also Meehan at 88. As such, judgment should enter for the defendants on plaintiff's due process claim.

5. Plaintiff Fails to Establish An Equal Protection Claim

It is by now well-established that liability in an equal protection case requires proof that (1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race …" See Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen, 878 F.2d 16, 21 (1st Cir.1989). As to the first prong of this test, plaintiff "must first 'identify and relate specific

11

instances where persons situated similarly 'in all relevant aspects' were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were 'singled ... out for unlawful oppression.' " Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir.1989).

Here, Jeannite fails to support his conclusory assertion of selective treatment with any facts whatsoever, as he presents no evidence showing that others similarly situated were treated differently by Haverhill police officers. Specifically, he identifies no other individual who refused to produce his license when asked to do so by a Haverhill police officer, but was not arrested and prosecuted for this failure. Moreover, he identifies no other individual who was the subject of a 911 call of "suspicious activity," and was located by police in a high-crime area in a car with a missing trunk lock, but was not stopped for questioning. As plaintiff cannot show that he was in any manner "selectively treated," his Equal Protection claim must fail.

  6. Plaintiff Fails to Establish a First Amendment Claim

Plaintiff claims that the defendants violated his Free Speech rights by abridging his "right to seek redress by the courts." Complaint, ¶18; see also Powell v. Alexander, 391 F.3d 1, 16 n.17 (1st Cir.2004) ("right to petition the courts for redress" implicates Free Speech rights). Plaintiff appears to base his First Amendment claim on the theory that Chief Brighi tried to "bargain" dismissal of the criminal charges in exchange for plaintiff's promise not to bring a civil suit.

As an initial matter, plaintiff has proffered no evidence implicating defendants Dekeon, Doherty, or Fogarty in a First Amendment claim. As such, plaintiff's First Amendment claim

should be dismissed as against these three defendants.[8]

Further, plaintiff's theory that Brighi tried to "bargain" dismissal of the criminal charges, which is based on a meeting that took place <u>at plaintiff's request</u>, is unsupported by the uncontested substance of that meeting. In any event, plaintiff can establish no right-to-redress violation because he lacks the element of retaliation that is central to such a claim. <u>See</u> <u>Powell</u>, 391 F.3d at 16 ("[o]ur constitutional system gives every citizen the right to seek redress in the courts … without fear that recourse to the law will make that citizen a target for retaliation").

Specifically, the undisputed evidence shows that Chief Brighi met with Jeannite and Jeannite's criminal attorney, Marsha Kazarosian ("Kazarosian"), at Kazarosian's request, shortly <u>after</u> criminal charges had already been filed against Jeannite. <u>Statement</u>, ¶24. To prepare for the meeting, Brighi reviewed the police reports generated by Jeannite's arrest, and concluded that probable cause existed for the arrest and filing of criminal charges against him. <u>Statement</u>, ¶25.

At the meeting, which was also attended by the head of the Internal Affairs Department, Sgt. John Arahovites, <u>Statement</u>, ¶26, Kazarosian repeatedly expressed concern that Jeannite's arrest would negatively affect his status as a student at Norwich University, and possibly result in his expulsion, giving Brighi the "impression … that Miss Kazarosian and Mr. Jeannite were looking for a way out of the charge." <u>Statement</u>, ¶27.

Based on compassion for Jeannite's situation and the relatively minor nature of the charges against him, Brighi offered to "make a call to the District Attorney's office," to try to get

---

[8] Moreover, as previously noted, the Complaint names Brighi in his official capacity only, and, therefore, plaintiff's First Amendment claim is a claim against the City only. <u>Graham</u>, 473 U.S. at 165-66, 105 S.Ct. 3099. As such, plaintiff must produce evidence of a "custom or policy" of First Amendment violations sufficient for municipal liability to attach. <u>Id.</u>, at 691. Such evidence is totally lacking here, and, therefore, plaintiff's First Amendment claim should be dismissed on this basis alone. Nonetheless, this Memorandum addresses plaintiff's First Amendment claim as if it were pled against Brighi individually.

Jeannite enlisted in a "diversion" program.  Statement, ¶28.  "Diversion" is a program run by the District Attorney's office which offers young people charged with minor violations a chance to perform community service in exchange for having the criminal charges removed from their record.  Statement, ¶29.

Brighi "certainly didn't hear anything … by Attorney Kazarosian or Mr. Jeannite that day that would lead me to believe there were any civil rights violations" by his officers.  Statement, ¶30.  However, Kazarosian's reputation as a high-profile civil rights lawyer, rather than a criminal attorney, suggested to Brighi the potential for a subsequent civil suit.  Id.; see also Borne, et al. v. Haverhill Golf & Country Club, Suffolk Superior Court, C.A. No. 96-6511-C (Jan. 24, 2000).  This concerned him, since his review of the police report and the statements made at the meeting established no wrongdoing, and, since, in his experience "not every civil rights lawsuit … deserves to be brought."  Statement, ¶30.  Thus, Brighi requested assurance from Kazarosian that she would not "bring some type of a lawsuit against the City after I grant your wish and try to get this case dismissed."  Statement, ¶31.  Kazarosian declined to give such assurance, and the meeting ended.  Statement, ¶32.

It is undisputed that Brighi had no further involvement in Jeannite's prosecution, and that neither he nor any Haverhill police officer had any communication with the prosecuting authorities about the disposition of the charges against Jeannite.  Statement, ¶37.

These facts cannot establish that Brighi violated plaintiff's right to seek redress, because they evince no adverse act taken in retaliation for plaintiff's suggestion of a civil suit.  As noted above, retaliation, or threat of retaliation, is the lynchpin of a First Amendment claim for violation of the right to petition, "because retaliatory actions may tend to chill individuals' exercise of constitutional rights."  Powell, 391 F.3d at 17.  As such, a plaintiff claiming violation

of his right to seek legal redress must show that the defendant took some adverse action against him based on his filing of, or threat to file, a lawsuit.  See Powell, 391 F.3d at 17 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568 (1977)) ("to prevail on a §1983 claim of retaliation for First Amendment activity, plaintiff must show that his conduct was a 'substantial factor' or … a 'motivating factor' for the defendant's retaliatory decision").

In this case, Jeannite's right-to-petition claim is short-circuited by the fact that he was arrested and charged before Brighi had any indication that he might file a civil suit, negating any claim that his arrest or prosecution was retaliation for his threat of a lawsuit.  Statement, ¶24.  Further, there is no evidence that once Brighi learned of the possibility of a lawsuit, any defendant took any step to alter the course of the ongoing prosecution of Jeannite.  Indeed, the evidence shows that neither Brighi nor any officer discussed the disposition of the charges against Jeannite with the prosecuting authorities at all.  Statement, ¶37.  As such, Jeannite cannot establish any retaliation against him based on his threat to file suit, and his First Amendment claim fails.  Contrast Powell, 391 F.3d at 17 (police officer established right-to-petition violation where evidence showed that city officials prevented his reinstatement in retaliation for his lawsuit against the City); Nicholson v. Moran, 961 F.2d 996 (1st Cir. 1992) (prisoner who alleged that prison officials disciplined him in retaliation for filing grievance against them stated cognizable right-to-petition claim); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (same); Poole v. County of Otero, 271 F.3d 955, 959-960 (10th Cir.2001) (plaintiff stated First Amendment retaliatory prosecution claim where police instituted criminal charges after receiving indication of his intent to file civil suit).

Jeannite's theory that Brighi violated his rights by seeking assurance that his compassionate offer of intervention – an offer made in response to Jeannite's request – would not result in a lawsuit against his officers thus reverses the nature of a proper First Amendment action, which requires evidence of an adverse act in response to the threat of a lawsuit. Jeannite cannot show that Brighi took any adverse action in response to the suggestion of a lawsuit, or, indeed, any adverse action at all, and his First Amendment claim therefore fails.

6-(a)   Brighi is Entitled To Qualified Immunity

Even if, arguendo, this Court were to find that Brighi's conduct might have amounted to a First Amendment violation, no reasonable police chief in Brighi's position would have reason to believe he violated plaintiff's rights in this manner. Consequently, Brighi is entitled to judgment in his favor on plaintiff's First Amendment claim on the additional grounds of qualified immunity.

7.   Plaintiff Fails To Establish the Requisite Elements of an MCRA Claim

In addition to the substantive bases set forth above, plaintiff's claim under the MCRA (Count II) should be dismissed because he fails to establish, as he must, that his exercise of rights was interfered with by "threats, intimidation, or coercion." G.L. c.12, §§11H-11I; see also Lopes v. Commonwealth, 442 Mass. 170, 184, 811 N.E.2d 501 (2004). Plaintiff admits that no officer threatened him in any way during his arrest, Statement, ¶18, and offers no evidence of any threats, intimidation, or coercion. Any claim that the arrest itself constituted threats, intimidation and coercion is unavailing, since it is well-established that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion, and thus does not implicate the [MCRA]." Longval v. Commissioner of Corrections, 404 Mass. 325, 333, 535 N.E.2d 588

(1989). As plaintiff's allegations are limited to direct violations of his rights, his claim under the MCRA fails and judgment should enter for the defendants on Count II.

### B. Plaintiff Has Failed to Establish His Intentional Tort Claims

Counts III through V, respectively, assert intentional tort claims for false imprisonment, assault and battery, and infliction of emotional distress against all defendants. Counts VII and VIII assert malicious prosecution and abuse of process by Dekeon and Doherty. In the interests of judicial economy, the Court should exercise pendent jurisdiction and dismiss these claims along with the related federal claims, for the reasons set forth below, since they derive from a common nucleus of fact and do not raise any novel or complex issues of state law. Vera-Lozano v. International Broadcasting, 50 F.3d 67, 70 (1st Cir. 1993).

#### 1. False Imprisonment (Count III)

"An arrest warranted by law is not 'false imprisonment.'" Doggett v. Hooper, 306 Mass. 129, 312, 27 N.E.2d 737 (1940); see also Rose v. Town of Concord, 971 F.Supp. 47, 51 (D.Mass. 1997, Young, J.) (police officer is not liable for this tort if "the police officer had a legal justification" for the restraint resulting from arrest). Justification for the restraint resulting from an arrest exists if the officer had probable cause to arrest the suspect. See Rose v. Town of Concord, 971 F.Supp. at 51-52 (dismissing false imprisonment claim against police officers where officers reasonably believed plaintiff had committed a felony).

As discussed in Section IV-A(1), supra, a criminal jury has already determined that probable cause existed for the arrest of Jeannite. Accordingly, Jeannite's claim for false imprisonment must fail as a matter of law. Compare Sietins v. Joseph, 238 F.Supp.2d 366, 380-81 (D.Mass. 2003, Dein, M.J.) (dismissing false imprisonment claim against police officers where probable cause existed for arrest of plaintiff).

17

    2.      Assault and Battery (Count IV)

"[A]n officer authorized to make an arrest may use such force as is reasonably necessary to effect the arrest." Julian v. Randazzo, 380 Mass. 391, 396, 403 N.E.2d 931, 934 (1980); see also Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir.1991) ("the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). Where an officer does not use excessive force to execute a lawful arrest, an assault and battery claim must fail. See Sietins, 238 F.Supp.2d at 380. As discussed in Sections IV-A(1) and (3) above, plaintiff's arrest was lawful, and plaintiff has offered no evidence whatsoever that any officer used excessive force to effect the arrest. Accordingly, his assault and battery claim must fail. Compare Sietins, 238 F.Supp.2d at 380 (dismissing assault and battery claim where probable cause existed for the arrest and plaintiff did not prove excessive force was used).

    3.      (Intentional) Infliction of Emotional Distress (Count V)

To prove intentional infliction of emotional distress, plaintiff must prove, among other things, that the defendants' conduct was extreme and outrageous.[9] Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 596, 747 N.E.2d 729, 747 (2001). Where police officers "merely carried out their obligations as law enforcement officials … their conduct 'as a matter of law cannot be deemed extreme and outrageous.'" Seitins, 238 F.Supp.2d at 379 (quoting Sena v. Commonwealth, 417 Mass. 250, 264, 629 N.E.2d 986, 994 (1994)). In Seitins, the Court dismissed a claim for this tort against officers who had arrested plaintiff on the basis of a false complaint of larceny because, the Court found, probable cause existed for the arrest. Seitins, 238 F.Supp.2d at 379. As discussed in Section IV-(A)(1) above, a criminal jury has already

---

[9] Paragraph 34 of the Complaint clearly establishes that Count IV sounds in intentional infliction of emotional distress, although this Count is ambiguously captioned.

18

determined that probable cause existed for plaintiff's arrest and prosecution. Accordingly, plaintiff's claim for intentional infliction of emotional distress must be dismissed.

    4.   Malicious Prosecution (Count VII)

To prove the tort of malicious prosecution, plaintiff must show that criminal process was commenced against him without probable cause. Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citing Correllas v. Viveiros, 410 Mass. 314, 572 N.E.2d 7, 10 (1991)). As discussed in Section IV-A(1) above, a criminal jury has already determined that probable cause existed for Jeannite's prosecution. Accordingly, Jeannite's claim for malicious prosecution must fail.

    5.   Abuse of Process (Count VIII)

To prove the tort of abuse of process, plaintiff must show that process was used against him for an "ulterior or illegitimate purpose." Vittands v. Sudduth, 49 Mass.App.Ct. 401, 406, 730 N.E.2d 325, 332 (2000). "The essence of this tort is the malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." Carroll v. Gillespie, 14 Mass.App.Ct. 12, 26, 436 N.E.2d 431, 439 (1982). Plaintiff offers no facts evidencing any "ulterior purpose" on the part of Dekeon, the only officer who pursued criminal process against him. To the extent plaintiff claims Dekeon's ulterior purpose was to cover up his wrongful arrest, his claim is unavailing since, as repeatedly noted, a criminal jury has already determined that plaintiff's arrest and prosecution were lawful. Accordingly, plaintiff's claim for abuse of process must be dismissed.

IV.     CONCLUSION

WHEREFORE, defendants George Dekeon, Stephen Doherty, Glen Fogarty and Stephen Brighi request that this Court enter summary judgment in their favor on all counts against them.

DEFENDANTS

GEORGE DEKEON, STEPHEN DOHERTY, GLEN FOGARTY and STEPHEN BRIGHI,

By their attorneys,

/s/Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO # 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116
617-556-0007

253818/METG/0549