UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-10541-RWZ

| | |
|---|---|
| JOEL JEANNITE,<br><br>      Plaintiff<br>v.<br><br>CITY OF HAVERHILL, STEPHEN BRIGHI, in His Capacity as CHIEF OF THE HAVERHILL POLICE DEPARTMENT, STEPHEN DOHERTY, GEORGE DEKEON, JR., and GLEN FOGARTY,<br><br>      Defendants | MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF CITY OF HAVERHILL AND CHIEF STEPHEN BRIGHI IN HIS <u>OFFICIAL SUPERVISORY CAPACITY</u> |

I.    <u>INTRODUCTION</u>

This action arises from the July 30, 2001 arrest of plaintiff Joel Jeannite ("Jeannite") in the City of Haverhill ("City") on charges of disorderly conduct and failure to produce a license and registration. Jeannite was subsequently convicted in Haverhill District Court of the latter charge.

In addition to a myriad of constitutional and tort claims against the defendant police officers, the Complaint also asserts Section 1983 claims for municipal and supervisory liability (Count X), and pendent state law claims of negligent supervision against the City and Chief Stephen Brighi (Count IX), and vicarious negligence against the City, based on the conduct of the remaining individual defendants (Count VI). Chief Brighi and the City seek summary judgment on all supervisory and municipal claims. The within Memorandum is submitted in support of their motion.[1]

---

[1] The individual defendants have contemporaneously filed a Motion for Summary Judgment on all counts against them.

II.     STATEMENT OF FACTS

The relevant facts underlying this case are set forth in the Defendants' Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987). The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the nonmovant's claim, or demonstrating that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence. Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

IV.     ARGUMENT

A. Plaintiff Fails to Establish a Municipal or Supervisory Liability Claim (Count X)

As an initial matter, plaintiff's claims for municipal and supervisory liability fail because, as explained in the Individual Defendants' Motion for Summary Judgment, he cannot prove any underlying unconstitutional conduct by the individual officers. See Wilson v. Town of Mendon, 294 F.3d 1, 6 (2002) ("If [] the officer has inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable"). Moreover, plaintiff's municipal and supervisory liability claims fail for the reasons set forth below.

      1.      <u>Plaintiff Fails to Establish a Municipal Liability Claim</u>

It is axiomatic that no liability attaches to a municipality pursuant to a mere *respondeat superior* theory. <u>Monell</u> v. <u>Department of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). Rather, liability lies only when a municipal "policy or custom" causes the alleged constitutional deprivation. <u>Manarite</u> v. <u>City of Springfield</u>, 957 F.2d 953, 958 (1st Cir.1992).

Jeannite asserts that the City maintained a custom or policy of failing to train its police officers. <u>Complaint</u>, ¶55; <u>see also</u> <u>Manarite</u>, 957 F.2d at 958 ("under certain limited circumstances a municipality may be liable … for constitutional violations resulting from its failure to train municipal employees"). However, Jeannite has adduced no evidence whatsoever that would meet the "exceptionally stringent" criteria for establishing a failure-to-train claim. <u>Hayden</u> v. <u>Grayson</u>, 134 F.3d 449, 456 (1st Cir.1998) (citing <u>Canton</u> v. <u>Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197 (1989)</u>); <u>Rodriques</u> v. <u>Furtado</u>, 950 F.2d 805 (1st Cir.1991) ("[o]nly where a municipality's failure to train its [police officers] in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be thought of as a city 'policy or custom' that is actionable").

To prove his claim, Jeannite must identify a "specific deficiency in training," provided to Haverhill officers <u>and</u> demonstrate that this deficiency was the "moving force" behind his alleged constitutional injury. <u>Wilson</u> v. <u>Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002); <u>see also</u> <u>Canton</u>, 489 U.S. at 391, 109 S.Ct. at 1205 (when considering a failure-to-train claim, court must ask: "would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"). Moreover, the plaintiff must establish that the City knew that the identified training was required, yet deliberately chose not to provide it. <u>Hayden</u>, 134 F.3d at 456; <u>Hegarty</u> v. <u>Somerset County</u>, 53 F.3d 1367, 1380 (1st Cir. 1995).

In this case, plaintiff utterly fails to meet the criteria set out above. Plaintiff does not even identify any "specific deficiency" in the training provided Haverhill officers, much less provide any evidence of such a deficiency. Nor does plaintiff offer any evidence that the City knew of a deficiency in its officers' training, that the City deliberately chose not to provide such training, or that the lack of such training caused the injuries he now alleges.

To the contrary, the record demonstrates that all Haverhill officers, including the defendants, receive training in the constitutional issues underlying this Complaint that meets or exceeds state mandates. Specifically, all Haverhill police officers, including the defendants, complete training in an academy operated by the Municipal Police Training Committee (formerly called the Massachusetts Criminal Justice Training Council), which includes instruction in constitutional issues such as the law of arrest, search and seizure and motor vehicle stops. Statement, ¶38. After completing the academy, officers receive an in-house orientation, which includes ride-alongs with senior officers. Statement, ¶39. All officers also take between 32 and 40 hours of annual "In-Service" training, which includes instruction on developments in constitutional law. Statement, ¶40.[2]

Further, every officer is provided a copy of the Haverhill Police Department's Policies and Procedures manual, which contains information on constitutional law issues such as search and seizure, arrest, and the use of force. All officers must provide written acknowledgement of receipt of the Policies and Procedures manual. Statement, ¶41.

In addition, all the defendants have attended seminars on topics such as investigation, public service, and quelling civil disturbances, which are coordinated by the Department's

---

[2] The training requirements for police officers are set forth in G.L.c. 41, § 96B, which provides that every officer must complete a course approved by the Municipal Police Training Committee prior to assuming full-time duty, then must attend "in-service training" at prescribed intervals during service. See G.L. c. 41, §96B, ¶¶1-2.

Training Officer.  Statement, ¶42.  At the time of the incident underlying the Complaint, all of the defendant officers had also attended cultural diversity training.  Id.

The training of the defendants in this case is superior to that which this Court has held sufficient to preclude a failure-to-train claim.  See, e.g., Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989, 891 F.2d at 380-81 (failure-to-train claim failed where evidence showed that defendant police officer received only four hours of constitutional law training at police academy; did not officially receive notice of changes in the law; was not aware of any incentives for pursuing further training, and had never received a policy manual); Swain v. Spinney, 117 F.3d 1 (1st Cir.1997) (rejecting failure-to-train claim in unlawful strip search case, where every officer was supplied with strip search policy guidelines, including periodic updates – even though not all officers had a consistent understanding of those materials).  As such, judgment should enter for the City on plaintiff's claim for municipal liability.[3]

  2.  Plaintiff Fails to Establish a Supervisory Liability Claim

Count X also asserts a supervisory liability claim, encompassing a failure to investigate and discipline officers accused of misconduct, against Chief Brighi.  Complaint, ¶55.  As with municipal liability, "supervisory liability may not be predicated upon a theory of *respondeat superior."*  Febus-Rodriguez v. Betancourt-Lebrón, 14 F.3d 87, 91 (1st Cir.1994).  Rather, "a supervisor may be found liable only on the basis of his own acts or omissions."  Id., at 92.  Such acts or omissions "must amount to a reckless or callous indifference to the constitutional rights of others."  Id.

---

[3]Count X also appears to assert a claim for supervisory liability against the City.  Complaint, ¶55.  To the extent such a claim is even cognizable, it would fail here because, as discussed below, plaintiff identifies no instance, other than his own, in which the police department is even alleged, much less proven, to have failed to supervise its officers.  Therefore, plaintiff cannot establish the "custom or policy" necessary for municipal liability to attach.

Failure-to-supervise claims are subject to the same stringent standard applied to failure-to-train claims, described above. Rodriques v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991). That is, plaintiff must establish some deficient action or inaction on the part of the supervisor, and demonstrate that the deficiency caused his alleged injury. See Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir.1998) (supervisory liability requires proof of an affirmative link sufficient to show causation). "Notice is a salient consideration in determining the existence of supervisory liability." Camilo-Robles, 151 F.3d at 7; Febus-Rodriguez, 14 F.3d at 93 ("[a]n important factor in determining whether a supervisor is liable … is whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens"). In sum, plaintiff must establish that the conduct of which he complains "amounted to 'condonation or tacit authorization' of wrongdoing," Rogan v. Menino, 175 F.3d 75, 78 (1st Cir.1999); see also Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) (supervisory liability claim requires showing of behavior that "could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence amounting to deliberate indifference' ").

As noted, Jeannite claims that Chief Brighi demonstrated deliberate indifference to the rights of Haverhill citizens by failing to properly investigate and discipline police officers accused of misconduct, and that "these failures delivered a message to the [defendants] that there would be no departmental sanctions for engaging in misconduct." Complaint, ¶55-56. Plaintiff has not, however, identified specific deficiencies in the Chief's investigatory and disciplinary procedures, and his claim should be dismissed on this basis alone.

Moreover, affirmative evidence establishes that Chief Brighi and the Haverhill Police Department investigate citizen complaints rigorously, and mete out discipline when warranted. Pursuant to departmental policy, receipt of a written complaint triggers an investigation which

includes interviews with all witnesses, requests for written reports from the subject officer(s) and any other member of the police department connected to the subject matter of the complaint, review of the complaint and subsequent investigation by the Chief of Police, and, if necessary, creation of a panel to conduct further investigation.  Statement, ¶34.  However, filing of a written complaint is not necessary to trigger an investigation; where a complainant wishes to make a verbal complaint only, the Officer in Charge at the time must submit a report to the Chief of Police "indicating the action taken on the complaint."  Statement, ¶35.  The department's policy further provides that, where warranted, a range of disciplinary measures may be imposed, including but not limited to letters of reprimand, punishment duty, suspension, and discharge.  Statement, ¶35.

  Chief Brighi has testified that, in the seven years prior to his becoming Chief (during which period he was head of Internal Affairs), the department investigated five to 10 citizen complaints each year, with about half resulting in disciplinary action, including an average of one suspension a year.  Statement, ¶43.  During his 15-month tenure as Chief, Brighi suspended one officer as the result of a citizen complaint.  Id.

  Plaintiff submits no evidence that the department or Chief Brighi's investigation or disciplinary procedures were deficient in any way.  He identifies no instance, other than the one here, in which the department is even alleged to have failed to adequately investigate or discipline any officer accused of misconduct.  Moreover, plaintiff does not even establish that the department failed to investigate his own complaint.  Instead, the record shows that, shortly after Jeannite's arrest, Chief Brighi met with Jeannite and his criminal attorney, at the attorney's request, to discuss the arrest.  Statement, ¶24.  Brighi brought his Internal Affairs officer, John Arahovites, to the meeting.  Statement, ¶26.  Prior to the meeting, Brighi reviewed the arrest

report and determined that the arrest was lawful. Statement, ¶25. Brighi testified that at the meeting, "I certainly didn't hear anything … by Attorney Kazarosian or Mr. Jeannite that day that would lead me to believe there was any civil rights violations." Statement, ¶30. Nonetheless, Brighi and Arahovites offered Jeannite the opportunity to file a written complaint, which would trigger the formal investigation procedures described above – and even offered to bring Jeannite a complaint form. Statement, ¶33. Jeannite, however, declined to file a written complaint. Id.

Notwithstanding the lack of a written complaint, Brighi directed Arahovites to order all three officers involved in the arrest to submit reports on the incident for his review, which they did. Statement, ¶36. Based on his review of the reports, Brighi saw "absolutely" nothing wrong with the arrest, and deemed no further investigation warranted. Id. These facts demonstrate that, despite Jeannite's refusal to file a written complaint, Chief Brighi and the department did not "fail" to investigate his allegations of wrongdoing; rather, Brighi investigated them in accordance with departmental policy and deemed them meritless.[4]

Moreover, plaintiff's supervisory claim fails because he cannot show any "affirmative link" between any alleged failure to investigate allegations of misconduct and his injury. Camilo-Robles, 151 F.3d at 7. As noted, such a link requires proof that Chief Brighi had been previously "put on notice" that the defendant police officers were likely to violate citizens' rights in the manner alleged here. Id.; Febus-Rodriguez, 14 F.3d at 93. Here, there are no facts that could have put Brighi on notice that any of the defendant officers was likely to commit the misconduct alleged here – or indeed, any misconduct at all.

---

[4]This conclusion is not refuted by Arahovites' testimony that there was no investigation of Jeannite's allegations by the Internal Affairs Department. As noted, a formal investigation is triggered by a written complaint, which Jeannite refused to file. It is undisputed that Chief Brighi took the actions noted herein, which manifestly comprise an adequate "investigation."

Specifically, the evidence shows that only one citizen complaint was lodged against Doherty prior to the incident underlying the Complaint. Statement, ¶44. This complaint, in which a white female alleged that Doherty had punched her while effecting her arrest, was investigated and deemed unfounded. Id. Similarly, Fogarty was the subject of only one citizen complaint, for making an inappropriate remark. This complaint was investigated and Fogarty received a verbal reprimand. Statement, ¶45. Dekeon, who had been an officer for more than 12 years as of the date of Jeannite's arrest, had been reprimanded a handful of times prior to the arrest for minor infractions such as tardiness. Statement, ¶46. The plaintiff has offered no evidence, nor is there any evidence, of additional complaints of misconduct against these officers that were not investigated by the department.

Based on this history, Brighi had no notice that any of the defendant officers was likely to violate the constitutional rights at issue in this case. See County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 412, 117 S.Ct. 1382 (1997) ("[a] finding of culpability … must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. (emphasis in original)). As such, plaintiff cannot show the "affirmative link" between any alleged lack of investigation or discipline and his alleged injuries (particularly with respect to the investigation of his own claim, which occurred after his arrest, and therefore could not, either legally or logically, have caused any violation of his rights). Moreover, the disciplinary records of these officers shows that, in fact, the department did adequately investigate claims of misconduct against these officers and did not, as plaintiff alleges, "deliver[] a message … that there would be no departmental sanctions for engaging in misconduct." Accordingly, plaintiff's claim for failure-to-supervise should be dismissed on this additional basis.

B.  Plaintiff Fails to Establish His Negligence Claims (Counts VI, IX)

Count IX asserts that, even if the City is not liable for constitutional deprivations, it should be held liable in negligence for failure to train and supervise.[5] Complaint, ¶50. Count VI asserts that the City is further liable for the negligence of the individual defendants. Complaint, ¶38. In the interests of judicial economy, the Court should exercise pendent jurisdiction and dismiss these claims along with the related federal claims, for the reasons set forth below, since they derive from a common nucleus of fact and do not raise any novel or complex issues of state law. Vera-Lozano v. International Broadcasting, 50 F.3d 67, 70 (1st Cir. 1993).

1. Plaintiff's Negligence Claims Fail Due to Lack of Sufficient Presentment

As an initial matter, plaintiff's claims for negligence should be dismissed due to lack of sufficient presentment, which is a condition precedent to bringing suit against a municipality under G.L. c.258, the Massachusetts Tort Claims Act. See G.L.c. 258, §4; Krasnow v. Allen, 29 Mass.App.Ct. 562, 566, 562 N.E.2d 1375 (1990).[6] The presentment requirement includes both procedural and substantive prerequisites, in that the letter must be timely submitted to the correct party, and must contain adequate notification of a claim, so that the responsible public official "can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." Rodriguez v. Cambridge Housing Authority, 59 Mass.App.Ct. 127, 134, 795 N.E.2d 1 (2003). "The presentment letter should be 'precise' in identifying the basis of the claim; it cannot be 'so obscure that educated public officials should

---

[5] Plaintiff asserts this claim against both the City and Chief Brighi. The claim must be dismissed against Chief Brighi pursuant to G.L. c.258, §2, which immunizes public employees from liability for negligent acts.

[6] Specifically, G.L. c. 258, §4 provides in pertinent part: "[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless [a] claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."

10

find themselves baffled or misled with respect to' the claim asserted." Id., 59 Mass.App.Ct at 134, 795 N.E.2d 1 (quoting Gilmore v. Commonwealth, 417 Mass. 718, 723, 632 N.E.2d 838 (1994)).

In this case, plaintiff's presentment letter did not fairly notify City officials of the bases for liability asserted in Counts VI and IX, because the letter contains no reference whatsoever to any alleged negligence by the City or its employees. Statement, ¶47. As concerns the claims at issue, the letter does not allege any failure by the City to adequately train and supervise its officers; nor does the letter allege any negligence by the defendant police officers. Id. Instead, the letter alleges only constitutional and intentional torts – conduct for which the City may not be held liable under the Tort Claims Act. Id.; see also G.L. c.258, §10(c). As such, the letter "cannot fairly be read as stating claims for negligent" torts. Tambolleo v. Town of West Boylston, 34 Mass.App.Ct. 526, 533, 613 N.E.2d 127 (1993). In Tambolleo, the Court held that presentment letters which asserted assault and bodily injury by a police officer were insufficient to permit plaintiffs to proceed against the Town for negligent supervision and emotional distress, since "the sole claim made in the plaintiffs' letters was one barred by" the Tort Claims Act. Id. Here, as in Tombolleo, "[t]he instant letters do no more than make a claim on the basis of an identified act for which immunity has been expressly provided," and, therefore, would not serve to prompt the City to investigate plaintiff's claims for any purpose contemplated under the Tort Claims Act. Id.; see also Wightman v. Methuen, 26 Mass.App.Ct. 279, 282, 526 N.E.2d 1079 (1988). (plaintiff, whose son was injured during schoolyard incident, was prohibited from bringing negligence claim against town based on failure to seek medical assistance, since presentment letter spoke only of failure to supervise schoolyard). "Failure to comply with the

presentment requirement is fatal." Tivnan v. Registry of Motor Vehicles, 50 Mass.App.Ct. 96, 103, 734 N.E.2d 1182 (2000). Therefore, plaintiff's claims for negligence should be dismissed.

  2. Plaintiff Fails to Substantively Establish a Claim for Negligent Training and Supervision (Count IX)

Plaintiff's claim for negligent training and supervision should also be dismissed on substantive grounds. Plaintiff's claim of negligent training should be dismissed because, as explained above, plaintiff proffers no evidence demonstrating that the training of the City's officers was deficient, while the City has provided affirmative evidence that the training of all its officers met or exceeded state-law requirements. "[C]ompliance with a statute or regulation [is] prima facie evidence of due care." Parker v. Town of Swansea, 270 F.Supp.2d 92, 102 (D.Mass. 2003). As plaintiff has provided no evidence rebutting the City's evidence that its officers' training exceeded statutory mandates, plaintiff cannot establish that the City breached its duty to train its police officers, and this claim should therefore be dismissed. See Parker, 270 F.Supp.2d at 102 ("in the absence of any evidence offered by [plaintiffs] that the Town failed adequately to train its officers, and in the face of evidence of the officer's training in compliance with the requirements of state statutory regulations, [plaintiffs] fail to show a breach of any duty of the Town"); Rochleau v. Town of Millbury, 115 F.Supp.2d 173, 179 (D.Mass. 2000, Gorton, J.) (dismissing claim that Town failed to train its officers in providing medical care to detainees, where plaintiff produced no evidence that such training was not provided, and Town presented evidence that it complied with state requirements relating to the training of officers in first aid and CPR); see also Tambolleo, 34 Mass.App.Ct. at 531, 613 N.E.2d 127.

Similarly, plaintiff has offered no evidence to establish the tort of negligent supervision, which requires proof that the City (1) knew or should have known that the officers had a

12

proclivity to commit misconduct; and (2) failed to take corrective action.  See Copithorne v. Framingham Union Hosp., 401 Mass. 860, 865, 520 N.E.2d 139 (1988).

Plaintiff's negligent supervision claim utterly fails, because, as explained above, the defendant officers' record is devoid of evidence that would put the City on notice that they might commit unconstitutional conduct and obligate it to take corrective action.  As such, plaintiff cannot establish a negligent supervision claim.  Contrast Dobos v. Driscoll, 404 Mass. 634, 537 N.E.2d 558 (1989) (negligent supervision proved where defendant police officer had lengthy history of misconduct, including abuse of girlfriend; several instances of abusive behavior toward motorists; and disciplinary infractions that resulted in recommendation that officer have no direct contact with public).

3. Plaintiff Fails to Substantively Establish a Claim for Vicarious Negligence (Count VI)

Plaintiff claims that the City is also liable because the individual defendants were negligent "in detaining, questioning, arresting and prosecuting plaintiff."  Complaint, ¶37.  As an initial matter, the Court should "look not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts," and dismiss plaintiff's claim of negligence as wholly unsupported by the Complaint, which asserts unconstitutional and intentional, rather than negligent, conduct.  Schenker v. Binns, 18 Mass.App.Ct. 404, 406-407, 466 N.E.2d 131 (1984) (denying motion to amend complaint to add assault and battery claim based on conduct that was clearly negligent).

Moreover, plaintiff's claim for negligence fails for the same reason that his claims of unconstitutional conduct fail:  that is, the officers' actions in this case were reasonable.  See Morgan v. Lalumiere, 22 Mass.App.Ct. 262, 493 N.E.2d 206 (1986) ("[n]egligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances");

13

Beaver v. Costin, 352 Mass. 624, 626, 227 N.E.2d 344 (1967).  As fully set forth in the Individual Defendants' Motion for Summary Judgment, Doherty and Fogarty's investigatory stop of plaintiff was justified by reasonable suspicion, while Dekeon's arrest and prosecution of him was justified by probable cause, which is defined as a reasonable belief that the arrestee committed the offense for which he was arrested.  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996).  Where, as here, the officers' conduct in "detaining, questioning, arresting and prosecuting" Jeannite surpasses the Fourth Amendment's reasonableness requirement, there is no basis for a claim that the officers failed to exercise reasonable care and were thus negligent.  Therefore, plaintiff's vicarious claim against the City should be dismissed.  See Joyce v. Town of Tewksbury, 112 F.3d 19, 22 (1st Cir.1997) ("the ultimate touchstone [of the Fourth Amendment] is one of reasonableness").

IV.     CONCLUSION

WHEREFORE, the City of Haverhill and Chief Stephen Brighi request that this Court enter summary judgment in their favor on Counts VI, IX and X, and dismiss said counts against them.

DEFENDANTS

CITY OF HAVERHILL and
CHIEF STEPHEN BRIGHI,

By their attorneys,

/s/Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO # 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116
617-556-0007

261772/METG/0549