UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JOEL JEANNITE, | * |
| | * |
| Plaintiff | * |
| v. | * |
| | * |
| CITY OF HAVERHILL, STEPHEN | *   C.A. NO. 04-10541-RWZ |
| BRIGHI, in his capacity as CHIEF OF THE | * |
| HAVERHILL POLICE DEPARTMENT, | * |
| STEPHEN DOHERTY, GEORGE DEKEON Jr., | * |
| JOHN DOE, and JOHN ROE | * |
| | * |
| Defendants | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **PLAINTIFF'S STATEMENT OF UNCONTESTED FACTS**

### I. Introduction and Brief Statement of the Case

This case involves the arrest of the plaintiff upon a Terry stop. Upon demand of the defendant officers, the African-American plaintiff produced identification, in the form of a Norwich College photo id. It had a photograph of the plaintiff with his white girlfriend on the back. The defendant officers took offense at this and the result was the plaintiff's arrest.

Defendants have attempted to insert "facts" suggesting that the plaintiff's arrest arose from a motor vehicle stop. However, this was not a motor vehicle stop. The stop of the plaintiff was a Terry investigative stop, in response to a citizen call reporting suspicious behavior. It did not involve operation of a motor vehicle or a motor vehicle or even any observation of criminal activity.

### II. Material Facts

Plaintiff lists the following as the relevant, undisputed facts.

1. While on patrol on July 31, 2001, at approximately 8:00 pm, the defendant police

officers Doherty, Fogarty and Dekeon received a call from dispatch about a citizen call that reported a suspicious person on Union Street. [Doherty deposition, 65-68, Exhibit A]

2. In response to this call, defendants Doherty and Fogarty stopped plaintiff Joel Jeannite. [Doherty deposition, 82, Exhibit A]

3. In the course of this Terry stop, defendants Doherty and Fogarty asked the plaintiff to produce identification. [Doherty deposition, 82, Exhibit A]

4. Plaintiff Jeannite produced identification in the form of a college identification card. [Jeannite deposition, 69-70, Exhibit B]

5. The identification card had a picture of Mr. Jeannite, an African-American, and his Caucasian girlfriend on the back of it. [Jeannite deposition, 70-71, Exhibit B]

6. The defendants took offense at this photo, commenting ,"What's a good looking white chick dating a black kid like that?" [Jeannite deposition, p.73, Exhibit B]

7. The defendants arrested Mr. Jeannite, charging him with disorderly conduct and failing to produce his driver's license. [Dekeon deposition, 70, Exhibit C]

8. Defendant Brighi, in his capacity as Haverhill chief of police offered to drop the charges against the plaintiff in exchange for plaintiff releasing and waiving civil rights claims he had based upon the arrest. [Defendants' Statement of Material Facts, 5]

9. Plaintiff Jeannite declined Officer Brighi's offer. [Defendants' Statement of Material Facts, 6]

10. There is a handwritten notation on the District Attorney's copy of the complaint saying "Would not take CWOF! DO <u>NOT</u> DISMISS." [emphasis in original, Exhibit D]

11. At trial, a jury acquitted Mr. Jeannite of disorderly conduct but found him guilty of not having his license with him.

**ALL OTHER FACTS ARE CONTESTED**

|  |  |
|---|---|
|  | Respectfully submitted,<br>Joel Jeannite,<br>by his counsel, |
| Date: 11/7/05 | /s/ AndrewM. Fischer<br>Andrew M. Fischer<br>BB0# 167040<br>JASON & FISCHER<br>47 Winter Street<br>Boston, MA 02108<br>(617) 423-7904 |

jeannite\plaintiff's uncontested facts.wpd