UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10541-RWZ

JOEL JEANNITE

v.

CITY OF HAVERHILL, et al.

MEMORANDUM OF DECISION

June 30, 2006

ZOBEL, D.J.

On July 30, 2001, plaintiff Joel Jeannite was arrested on charges of disorderly conduct and failure to produce a license and registration. At trial, a jury acquitted on the first charge, but convicted on the second. Plaintiff subsequently filed suit against the City of Haverhill ("the City"); Stephen Brighi, the City's former police chief; and Officers George Dekeon, Jr., Stephen Doherty, and Glenn Fogarty.[1] Plaintiff, who is an African-American, claims that the police stopped him because of his race and, further, that although he was cooperative when approached, he was nevertheless wrongfully arrested and imprisoned. The complaint asserts various federal and state civil rights violations, as well as claims in tort. Currently pending are defendants' motions[2] for summary judgment, which plaintiff opposes. Summary judgment is appropriate

---

[1] Not all of the defendants were involved in all parts of the central incident, nor are all named as defendants in each count. For the most part, however, it is unnecessary to refer to defendants individually.

[2] Defendants have filed two motions for summary judgment, one for the individual defendants, and one for the City and defendant Brighi in his official capacity.

if—viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor—no genuine issue of material fact remains. See Fed. R. Civ. P. 56©); Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994).

I.     Section 1983

In Count I, plaintiff contends that the Individual Defendants violated several of his federal constitutional rights, "including but not limited to" his right to be free from unreasonable searches and seizures, his right to due process, his right to be free from false arrest and malicious prosecution, and his right to equal protection under the law. (Compl. ¶ 18). Count I does not further detail any of the alleged federal violations, and plaintiff's summary judgment papers are not a model of clarity or consistency. I have therefore endeavored to construe the claims broadly and to consider all possible grounds for liability.

To the extent that plaintiff's § 1983 claim is based upon allegations of false arrest and malicious prosecution, the claim is barred by Heck v. Humphrey, 512 U.S. 477, 484-87 (1994). To prevail on either claim, plaintiff would have to establish a lack of probable cause, see Lallemand v. Univ. of R.I., 9 F.3d 214, 215 (1st Cir. 1993); Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001), thereby necessarily undermining the validity of his conviction. Under Heck, a plaintiff may not sue for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid unless that plaintiff first proves that the conviction or sentence has been reversed, expunged or otherwise declared invalid." Sholley v. Town of Holliston, 49 F. Supp. 2d

14, 18 (D. Mass. 1999) (internal quotation marks omitted).  In the First Circuit, Heck applies where, as here, the plaintiff is not presently incarcerated.  See Figueroa v. Rivera, 147 F.3d 77, (1st Cir. 1998); Davis v. Schifone, 185 F. Supp. 2d 95, 100 (D. Mass. 2002).  And it also applies where plaintiff has been convicted of only one of the charges for which he was arrested.  See id.  In this case, as in Sholley v. Town of Holliston, 49 F. Supp. 2d 14, 18 (D. Mass. 1999), "[t]he arrest was a single, indivisible event," and thus plaintiff could not undermine the validity of the arrest without undermining any subsequent conviction.  Id.  For similar reasons, Heck bars plaintiff's § 1983 claim to the extent alleges a Fourth Amendment violation arising out of his arrest.[3]

Count I also alleges that defendants violated the Fourth Amendment and the standards established by Terry v. Ohio, 392 U.S. 1 (1968), when plaintiff was initially stopped.  As an initial matter, this claim is seemingly also barred by Heck.  If the officers lacked reasonable suspicion when they first approached plaintiff, their subsequent conduct—i.e., requesting that he provide a driver's license and arresting him for failing to do so—would have been unwarranted, and his conviction would thus have to be reversed.  See Brown v. Texas, 443 U.S. 47 (1979) (where officers lacked reasonable suspicion that defendant was engaged in criminal activity, they had no

---

[3]Plaintiff contends that Heck does not apply where racial bias is alleged.  The cases he cites, however, concern allegations of selective enforcement under the Equal Protection Clause.  See, e.g., Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1166-67 (10th Cir. 2003); Carrasca v. Pomeroy, 313 F.3d 828, 836 (3d Cir. 2002).  Defendants, however, do not argue that Heck bars plaintiff's Equal Protection claim, but instead challenge that claim on the merits.  (Individual Defendants' Mem. in Supp. of Mot. for Summ. J. 11-12).  See discussion infra.

basis for stopping defendant and asking him to identify himself under state statute; his subsequent conviction for failure to identify himself therefore had to be reversed). In other words, if plaintiff proved an illegal Terry stop, he would necessarily undermine the validity of his conviction, a result impermissible under Heck. See Hyde v. State of Mass., No. 04-12429-RWZ, 2006 WL 753247, at *2 (D. Mass. 2006); Rodriguez v. Ellis, No. Civ. 01-90-P-C, 2001 WL 521849, at *3-4 (D. Me. 2001).

In any event, it is clear from the record that the Terry stop was supported by a reasonable and articulable suspicion. Specifically, the police stopped plaintiff after (1) receiving a transmission from the police dispatcher stating that a resident of Union St. had called 911 and claimed that a black male in a black Jaguar had come to her house and asked her questions, (2) further learning from the dispatcher that a Union St. resident had reported identical activity on the previous day;[4] (3) observing, upon arrival at Union St., a person and car matching the caller's description; (4) further observing that the Jaguar's trunk lock was missing, which is often a feature of stolen cars;[5] and (5) the prevalence of crime in the area. These facts provided a reasonable, articulable

---

[4] Plaintiff moves to strike all contents of the police dispatcher's call as inadmissible hearsay. (Pl.'s Statement of Contested Facts 3). Defendants refer to the call not for its truth, but rather to show the officers' state of mind, for which purpose it is admissible. See United States v. Fulmer, 108 F.3d 1486, 1500-01 (1st Cir. 1997).

[5] Plaintiff does not dispute the officers' observations, but instead argues that it "is not clear when" they observed the missing trunk lock, thereby suggesting that they may not have noticed the trunk lock until after they stopped plaintiff. (Pl.'s Statement of Contested Facts 5 (emphasis in original)). Plaintiff offers no evidence suggesting that the officers noticed the lock after they stopped him, however, so the only evidence before the court indicates that the officers observed the lock before approaching plaintiff's car. (Def.'s Ex. A, at 71; Ex. B, at 32).

4

basis for an investigatory stop.  See United States v. Woodrum, 202 F.3d 1, 7 (1st Cir. 2000) (recognizing need for deference to officers' experienced perceptions); United States v. Stanley, 915 F.2d 54, 56 (1st Cir. 1990) (location is relevant factor in determining whether Terry stop was justified); cf. United States v. Young, 105 F.3d 1, 7 (1st Cir. 1997) (affirming district court's finding of reasonable suspicion where one of the persons stopped matched suspect description).

Count I also asserts a violation of plaintiff's "right to security of the person." (Compl. ¶ 18).  Further clarification is provided by the Introduction to the Complaint, which alleges a civil rights violation based upon defendants' "us[e] of force beyond that which was necessary to place the plaintiff under arrest." (Compl. 1).  Plaintiff has conceded, however, that none of the officers touched him, except when handcuffing him, and that he suffered no physical injury as a result of his arrest.  (Pl.'s Statement of Contested Facts 10).  Thus, any claim of excessive force must fail.

Plaintiff also claims that defendants violated his right to freedom of association by making derogatory comments about his interracial relationship.  (Pl.'s Opp. 3, 6, 9).[6] The Supreme Court has recognized that the Constitution protects freedom of association, not only with regard to certain First Amendment activities, but also with regard to "intimate human relationships." Roberts v. U.S. Jaycees, 468 U.S. 609, 617 (1984).  Thus, plaintiff has a substantive due process right[7] to "a substantial measure of

---

[6]Count I actually only alleges a violation of plaintiff's free speech rights (Compl. ¶ 18), but his opposition papers also raise a freedom of association claim.

[7]Although plaintiff characterizes his claim as one under the First Amendment (e.g., Pl.'s Opp. 9), it is more properly treated as a substantive due process claim.

sanctuary from unjustified interference by the State" into "highly personal relationships." Id. at 618. In this case, however, that right was not violated. As an initial matter, I am skeptical that the officers' alleged derogatory comments rose to the level of actionable interference. See Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir. 1993) (courts determine whether state's conduct "constituted an undue burden on . . . associational rights" (emphasis added)). In any event, the claim fails because plaintiff has not established, as he must, "that the actor in question deliberately acted to interfere with a relationship." Williams v. Perry, 960 F. Supp. 534, 540 (D. Conn. 1996). Without proof that defendants made the alleged derogatory comments "with knowledge that the statements [would] adversely affect [plaintiff's] relationship" with his girlfriend, Griffin, 983 F.2d at 1548, plaintiff's claim fails.

The complaint also alleges a violation of plaintiff's "right to seek redress by the Courts." (Compl. ¶ 18). Specifically, plaintiff alleges that defendant Brighi impeded his access to the courts by offering to recommend dismissal of the criminal charges in exchange for plaintiff's promise not to bring a civil suit. With respect to this claim, the undisputed facts are as follows. Brighi met with plaintiff's criminal defense attorney at the attorney's request. (Pl.'s Statement of Contested Facts 12). When the attorney expressed concern for the effect criminal prosecution might have upon plaintiff's college education, Brighi offered to ask the District Attorney's office to dismiss charges against plaintiff and place him in a diversion program, if plaintiff promised not to bring a

civil rights claims against the City. (Id. at 13-14).[8] Plaintiff's attorney refused to agree to such a release. (Id. at 14). Defendant Brighi asked plaintiff if he wished to fill out a complaint form, but plaintiff declined. (Id.).

Plaintiff contends that Brighi's offer, which he never accepted, amounted to unconstitutional coercion. As plaintiff himself concedes, however, the Supreme Court has held that a prosecutor's agreement to drop criminal charges in exchange for a release of § 1983 claims is not per se coercive or unconstitutional. Newton v. Rumery, 480 U.S. 396, 395-96 (1987). As this court has previously noted, "[s]ince . . . such release-dismissal agreements are not per se improper, much less unconstitutional, the offer of such an agreement cannot possibly be construed as unconstitutional." Grant v. Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 360 (D. Mass. 2002). The same logic applies to this case, in which an offer was made and never accepted.

The crux of plaintiff's complaint is his Equal Protection claim. Plaintiff contends that he was a victim of racial profiling. "Selective enforcement of motor vehicle laws on the basis of race is a violation of the Equal Protection Clause of the Fourteenth Amendment." Flowers v. Fiore, 359 F.3d 24, 34 (1st Cir. 2004). To prevail on his selective enforcement claim, plaintiff "must present evidence that he was treated differently from similarly situated non-African-American motorists and that the action taken against him was motivated, at least in part, by his race." Id. at 35. With respect to the latter requirement, plaintiff maintains that the evidence supports his claim of

---

[8]Brighi asserts that he asked for the release because plaintiff's criminal defense attorney was a well-known civil rights litigator. (Def.'s Loc. R. 56.1 Statement ¶ 30).

7

racial bias, but most of the points he makes are based upon mischaracterizations of the record.  For example, plaintiff's opposition states that "the defendants stopped the plaintiff because he was a 'black man in a black jaguar.'" (Pl.'s Opp. 3).  Plaintiff fails to note, however, that this description was provided to police by a 911 dispatcher.[9]  Plaintiff also states that defendant Dekeon admitted that he would not have treated a similarly situated white person in the same way that he treated plaintiff.  (Pl.'s Opp. 10).  This assertion lacks any support in Dekeon's cited deposition testimony.  In fact, the language quoted by plaintiff comes from a statement by defendant Dekeon that, <u>in general</u>, he prefers to warn people rather than issue tickets.  Nothing in Dekeon's statement gives rise to an inference of racial bias.  (Pl.'s Ex. C, at 38).

In the end, the only evidence supporting plaintiff's claim of discriminatory intent is his own testimony.  Even if such evidence creates a triable issue of fact, however, plaintiff's Equal Protection claim fails because he has proffered no evidence of discriminatory effect.  Plaintiff must demonstrate that he is the member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class.  <u>See</u> <u>Chavez v. Illinois State Police</u>, 251 F.3d 612, 636 (7th Cir. 2001).  Plaintiff offers conclusory allegations of differential treatment, but has adduced no evidence—anecdotal or statistical—indicating that similarly situated individuals (i.e., non-African-American motorists who matched a 911 description and were observed in a car with a missing

---

[9]Moreover, because plaintiff has moved to strike the contents of the police dispatcher's call, <u>see</u> <u>supra</u> note 4, it is inconsistent for him to rely upon its contents.

lock in a high-crime area) were treated differently. No reasonable juror could find an Equal Protection violation on this record.

Because plaintiff has failed to raise a triable issue of fact as to any of the civil rights violations he alleges under § 1983, defendants' motion is allowed on Count I.

II.   State Law Claims

In the remaining counts,[10] plaintiff alleges a number of state law violations. In the absence of any viable federal law claim, I decline to exercise jurisdiction over the pendent state law claims. See Dominique v. Weld, 880 F. Supp. 928, 939 (D. Mass. 1995); Donovan v. Rurak, No. 01-10006, 2002 WL 745809, at *3 (D. Mass. 2002). In any event, the claims are without merit. Accordingly, Counts II, III, V, VII, and VIII are dismissed.

III.   Conclusion

The defendants' motions for summary judgment (Docket #36 and #38) are allowed. Defendants' motion for leave to file (#48) is allowed.

Judgment may be entered for defendants on Count I. Counts II, III, V, VII, and VIII are dismissed.

|  |  |
|---|---|
| 06/30/06 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |

---

[10] At the January 24, 2006 hearing, plaintiff withdrew Counts IV, VI, IX, and X.